MATTIE B. BYNUM v. NORTH CAROLINA BLUE CROSS AND
BLUE SHIELD, INC.

No. 7528SC670

(Filed 18 February 1976)

1. **Insurance § 8— limitation in policy — waiver by employee — no binding effect on insurer**

In an action to recover for sums spent for medical services allegedly covered by a health benefit plan administered by defendant, limitations which exclude coverage for plaintiff's child because her hospitalization began prior to the date plaintiff's enrollment in the plan became effective and was continuous, notwithstanding the fact that the daughter was discharged from the hospital one day and

readmitted the next, could not be waived by the alleged representation of one of defendant's employees that the daughter's discharge and readmission would satisfy the requirements of the policy, since, by the terms of the policy itself, no agent or other person had authority to change the insurance contract or waive any of its provisions without approval of duly authorized officers.

2. **Insurance §§ 8, 43.1— limitation in policy — time for asserting — waiver — denial of claim on specific ground — waiver of other grounds**

Plaintiff could not claim that failure of defendant to assert a limitation of the insurance policy in question until the lawsuit was instituted constituted a waiver, since plaintiff was made aware of the limitation by letter from the Insurance Commissioner's office more than six months prior to institution of the action; moreover, in order for the denial of a claim on a specified ground to work a waiver of all other grounds for denial, it is necessary at the time of such denial that the company be in possession of all the facts upon which it could have specified all the grounds then existing for denial, and defendant in this case was not given such facts.

APPEAL by plaintiff from *Grist, Judge.* Judgment entered 12 May 1975 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 18 November 1975.

On 6 May 1974 plaintiff filed this action to recover $21,716.22. Plaintiff alleged that she was a government employee participating in a federal health benefit plan administered by defendant and that from 2 April 1972 until 28 February 1973 her daughter incurred said indebtedness for medical services covered by the plan.

Defendant answered and denied liability on two grounds. First, it asserted that the plan denied benefits for "Milieu therapy." Second, it asserted that the plan denied benefits to one who was confined in a hospital on the date that the plan became effective "so long as the person is continuously confined." The plan further provided that successive hospital confinements were deemed continuous "unless separated by at least 90 days."

Plaintiff and her husband testified at the trial that in the summer of 1969 their daughter Barbara, 12 years old, weighed 155 pounds and was advised by a physician to go on a diet. As a result of the dieting she lost weight and developed a fear of food. Because of this fear of food, she became quite belligerent and began assaulting her parents viciously. She was treated by several psychiatrists before being admitted to Highland Hospital on 16 August 1971. In February 1972 plaintiff

became a federal employee and enrolled in the Federal Employees Program, (hereinafter referred to as "F.E.P."). Plaintiff and husband made inquiries as to whether F.E.P. would cover their daughter's expenses at Highland. They spoke with someone at defendant's office in Fayetteville and, as a result of that conversation, went to see Mrs. Armfield, who was in charge of insurance claims at Highland. Mrs. Armfield telephoned defendant's Chapel Hill office, and, as a result of that conference, they had Barbara discharged from Highland on 1 April 1972 and re-admitted on 2 April 1972. Claims for Barbara's treatment after 2 April 1972 were submitted to defendant and were denied by defendant on the basis that Barbara was receiving milieu therapy which did not necessitate her being an inpatient. They further testified that the 90-day discharge requirement was never mentioned as a basis for the denial.

Mrs. Armfield testified that she handled insurance claims for patients at Highland; that in March 1972 she spoke with the Bynums about their daughter's expenses; that she called defendant's Chapel Hill office and spoke with Sarah Lindley who was supervisor of federal employee's claims, and that Sarah Lindley assured her that even though Barbara had been hospitalized since 16 August 1971, she would nonetheless be eligible for benefits under F.E.P. if she were discharged for one day and re-admitted the next. Plaintiff offered other evidence from Barbara's psychiatrists and teachers tending to show that her treatment at Highland was not milieu therapy.

At the conclusion of plaintiff's evidence the court directed a verdict in favor of defendant on the grounds that Barbara had been continuously confined since before the effective date of F.E.P. benefits and that the 90-day discharge requirement of F.E.P. had not been effectively waived.

Judgment was entered accordingly and plaintiff appealed.

*Pope & Brown, P.A., by Ronald C. Brown, for plaintiff appellant.*

*Claude V. Jones, for defendant appellee.*

MARTIN, Judge.

Plaintiff argues that defendant waived the 90-day discharge requirement by Lindley's assurances to Armfield. Alternatively, plaintiff argues that the 90-day discharge requirement

was waived by defendant's failure to assert it as a basis for denial of the claims until the lawsuit was instituted. Plaintiff contends that the defendant is a general agent for the National Blue Cross Blue Shield Corporation in the administration of F.E.P. within this area having power to waive provisions of the contract.

The basic Federal Employee Plan is contained in the Agreement between the Blue Cross Association, the National Association of Blue Shield Plans, and the United States Civil Service Commission.

The defendant agreed to provide benefits in accordance with certain parts of the base agreement including basic hospital benefits. Under the heading, "Definition of Terms" it is provided, in part that:

> "Hospital Confinement means the period from entry into a hospital as a registered bed patient until discharge. Successive hospital confinements shall be deemed to be one confinement unless separated by at least 90 days."

The certificate, or service benefit plan held by the plaintiff under the provisions of the basic agreement provides that:

> "Hospital confinement is the period from admission into a hospital as a bed patient until discharge. Successive hospital admissions are deemed to be one confinement unless separated by at least 90 days . . . . "

The basic plan also provides that there are no hospital benefits on coverage under the following conditions:

> "Services and supplies furnished to a person who, on the effective date of enrollment under an option of this contract, is confined in a hospital, so long as the person is continuously confined therein. . . . "

The certificate, or service benefit plan, issued to plaintiff under the authority of the basic plan provides that no benefits will be furnished for:

> "Hospital services and in-hospital medical care rendered to a subscriber who, on the date his enrollment first becomes effective, is confined in a hospital as long as he is continuously confined therein."

It is further provided in the basic plan that:

"No agent, person, organization, or association has au-
thority to change this contract or waive any of its pro-
visions. No change in this contract shall be valid unless
approved by duly authorized officers of the corporations
and the Commission evidenced by amendment to this con-
tract or by letter agreement relating thereto."

[1] Conceding arguendo, that an employee of defendant
(Sarah Lindley) told a representative of Highland Hospital
(Shirley Armfield) sometime in March 1972, after the certifi-
cate held by plaintiff had been issued and was in effect, that
a discharge and readmission of Barbara from the hospital
would satisfy the requirements of the certificate, could the limi-
tations on coverage be thereby waived? We do not think so.

By the terms of the insurance policy itself, no agent, per-
son, organization, or association had authority to change the
insurance contract or waive any of its provisions without
approval by duly authorized officers of the corporations and
the Commission evidenced by amendment to the contract or by
letter agreement relating thereto. There is no evidence or con-
tention that any authorized officer of the Blue Cross Associ-
ation, the National Association of Blue Shield Plans, or the
U. S. Civil Service Commission has approved a change or waiver.
Further, there is no evidence that Mrs. Lindley was expressly
authorized by N. C. Blue Cross and Blue Shield, Inc. (her
employer), the Blue Cross Association, the National Association
of Blue Shield Plans, or the U. S. Civil Service Commission to
change or to waive the requirement of the certificate in the
manner in which the plaintiff contends she did.

"The authority of an agent with limited power to waive
the terms and conditions of written policies of insurance in
the absence of fraud or mistake or other compelling equitable
principle is ordinarily restricted to negotiations connected with
the inception of the contract and not to provisions of a written
contract which has already taken effect and been in force for
a period of time." *Foscue v. Insurance Company,* 196 N.C. 139,
144 S.E. 689 (1928).

The matter contended to have been waived in the present
case was a provision of a written contract which had already
taken effect and been in force for a period of time. The 90-day
discharge requirement was a provision of both the F.E.P. con-

tract and the certificate issued thereunder which reflected the coverage of risk and a limitation of liability and not a forfeiture. See *McCabe v. Casualty Co.*, 209 N.C. 577, 183 S.E. 743 (1936). Such a provision is binding and any purported change as contended by the plaintiffs would require a formal rider or endorsement to be issued in writing upon proper consideration by duly authorized officials with the same dignity as the issuance of the basic certificate requires.

Applying these principles of the law to the facts disclosed by the record, we find no evidence tending to show that the defendant had either express or implied authority to waive the conditions plainly set forth in the policy.

[2] Plaintiff further contends the 90-day discharge requirement was waived by defendant's failure to assert it initially as a basis for denial of the claims until the lawsuit was instituted. This action was instituted on the 6th day of May, 1974. The record indicates that Mr. Bynum was made aware of the 90-day discharge requirement in a letter from the Insurance Commissioner's Office which was dated in September of 1973. Mr. Bynum had protested the matter to the Insurance Commissioner, and the Insurance Commissioner had requested an explanation from Blue Cross. Thus, plaintiff was aware of the 90-day discharge requirement as early as September of 1973.

Further, in order for the denial of a claim on a specified ground to work a waiver of all other grounds for denial, it is necessary at the time of such denial that the company be in possession of all the facts upon which it could have specified all the grounds then existing for the denial. See 43 Am. Jur. 2d, § 1146.

The record in the present case shows that defendant was misled in handling this claim. The claims filed by Highland Hospital state the date of admission as April 2, 1972. The letter of defendant to Mrs. Mattie Bynum dated December 6, 1972, refers to Barbara's admission to Highland Hospital as April 3, 1972. The letter of Mrs. Mattie Bynum to United States Civil Service Commission, dated January 8, 1973, requesting an impartial review of the claim, states that Barbara was admitted to Highland Hospital in April, 1972. The letter of Mrs. Mattie Bynum to United States Civil Service Commission dated January 16, 1973 contains the statement that Barbara was admitted to Highland Hospital in April, 1972. The letter of Dr.

Marie Baldwin to U. S. Civil Service Commission dated August 16, 1973 does not mention that the date of Barbara's admission was August 16, 1971, nor that there was a discharge April 1, 1972, and a readmission on the following day which was not for medical reasons. Accordingly, the U. S. Civil Service Commission was not given all the facts upon which it could have specified all the grounds then existing for the denial.

For the reasons stated, we are constrained to hold that the trial court was correct in sustaining defendant's motion for a directed verdict under Rule 50 and dismissing the action.

The judgment appealed from is

Affirmed.

Judges VAUGHN and CLARK concur.